UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH DANIELS,                          Case No. 16-13798

        Plaintiff,                      Stephanie Dawkins Davis
v.                                        United States Magistrate Judge

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____/

**OPINION AND ORDER**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 11, 17)**

**I.**    **PROCEDURAL HISTORY**

    A.    <u>Proceedings in this Court</u>

    On October 25, 2016, plaintiff filed the instant suit seeking judicial review

of the Commissioner's decision disallowing social security disability benefits.

(Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District

Judge Thomas L. Ludington referred this matter to the undersigned magistrate

judge for the purpose of reviewing the Commissioner's decision denying

plaintiff's claims.  (Dkt. 2).  On February 2, 2017, the parties filed a notice of

consent to this Magistrate Judge's authority, which was signed by Judge

Ludington on February 6, 2017.  (Dkt. 13, 14).   The matter is before the Court on

cross-motions for summary judgment.  (Dkt. 11, 17, 18).  A hearing on the cross-

motions for summary judgment was held on December 5, 2017, pursuant to notice. (Dkt. 19).

B.    <u>Administrative Proceedings</u>

On September 27, 2013, plaintiff filed claims for period of disability and disability insurance benefits, alleging disability beginning May 1, 2010. (Tr. 189). Plaintiff amended the alleged onset date to September 7, 2013. (Tr. 15). The Commissioner initially denied plaintiff's disability application on January 24, 2014. *Id*. Thereafter, plaintiff requested an administrative hearing, and on February 18, 2015, he appeared with counsel before Administrative Law Judge ("ALJ") Anthony M. Smereka, who considered his case *de novo*. (Tr. 27-63). In an October 8, 2015 decision, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 12-22). The ALJ's decision became the final decision of the Commissioner on September 22, 2016, when the Social Security Administration's Appeals Council denied plaintiff's request for review. (Tr. 1-6).

For the reasons set forth below, the undersigned **DENIES** plaintiff's motion for summary judgment, **GRANTS** defendant's motion for summary judgment, and **AFFIRMS** the findings of the Commissioner.

## II.    FACTUAL BACKGROUND

Plaintiff was 55 years old, placing him in the "advanced age" category, on

the date he filed his application. (Tr. 21). Plaintiff has past relevant work as a sales person, which is skilled and medium as performed. *Id*. Plaintiff suffers from abdominal pain, obesity, congestive heart failure, atrial fibrillation, obstructive sleep apnea, and diverticulitis. (Tr. 17). The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff did not engage in any substantial gainful activity since the application date. (Tr. 17). At step two, the ALJ found that plaintiff had the following severe impairments: status post hernia repair and obesity. *Id*. The ALJ found the remainder of plaintiff's impairments to be non-severe.

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled one of the listings in the regulations. *Id*. at 17-18. The ALJ assessed plaintiff's residual functional capacity (RFC) as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except the claimant must avoid exposure to workplace hazards (e.g. unprotected heights or around dangerous moving machinery). The claimant cannot climb ladders/ropes/scaffolds; can occasionally climb ramps/stairs; can frequently balance, kneel, crouch, and crawl.

*Id.* at 18. At step four, the ALJ determined that plaintiff could perform his past relevant work as a sales person. *Id*. at 20-21. In the alternative, at step five, the

3

ALJ found that, given plaintiff's age, education, work experience and RFC, a significant number of jobs exists in the national economy that plaintiff is capable of performing. *Id*. at 21-22. Therefore, the ALJ concluded that plaintiff has not been under a disability from the application date through the date of the decision. *Id*. at 22.

## III. DISCUSSION

### A. Standard of Review

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). "However, the ALJ is not

free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing *Mullen*, 800 F.2d at 545.

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two: If the claimant does not have a severe

impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

B.    Evaluation of Plaintiff's Testimony/Credibility

At the hearing, plaintiff testified that the condition that prevents him from working is constant, ongoing abdominal pain that makes it difficult for him to sit for extended periods of time or wear clothing that covers his abdomen, and makes it hard for him to travel in a car. (Tr. 41). He also discussed his history of diverticulitis that was "too bad to scope," and abdominal surgery that left him "fully gutted," with a large incision and recurrent post-operative infections. *Id*. at 43-44. Subsequently, he developed a hiatal hernia that required another surgery because the infections made his abdominal wall weaker; and shortly after this

surgery, severe pain caused him to go back to the emergency room where he received blood transfusions due to blood loss. *Id*. at 45. ER personnel encountered heavy scarring when trying to draw out the blood that had collected in his abdomen. *Id*. Doctors have told him that his symptoms attributable to scar tissue from the surgeries, are "basically how it is going to be," and that he will need to deal with the pain. *Id*. at 37, 48-49. He stated that he is treating with Dr. Richter for pain management, and taking Methadone twice per day, Gabapentin three times a day, and Tramadol as needed. *Id*. at 42, 47. Plaintiff explained that he is most comfortable reclining with his pants undone, or lying on his side. He also explained that if he was not required to sit in a chair during the hearing, he would instead be in those positions. *Id*. at 49. He testified that driving to the hearing increased his pain from a 4-5 to a 7-8, and predicted that he would be spending a good deal of the next day lying down. *Id*. at 46-48.

The ALJ did not find plaintiff's testimony fully credible, reasoning as follows:

> … the medical record does not support the degree of
> dysfunction alleged. The claimant admitted the primary
> reason he cannot sustain employment is due to
> abdominal pain. The record however, does not contain
> any treatment beyond prescription of pain medication
> since his surgeries. Practitioners even noted his
> medication regime was relieving his pain to an
> acceptable level (Exhibit 6F, 8F). The claimant admitted
> he has not received any "draining" in the last year and

has not been checked for this. The claimant's reported activities further degrade his credibility. He admitted he cares for his father who has dementia, has "no problem" performing personal care tasks, prepares his own meals, completes household chores, and drives a motor vehicle (Exhibit 3E).

As for the opinion evidence, Dr. Richter concluded the claimant could not perform medium work on a sustained basis (Exhibit 7F). He provided no support for this conclusion and I give this statement little weight. Disability Determination Services (DDS) medical consultant B.D. Choi, M.D. concluded the claimant could perform medium work with occasional climbing and frequent balancing, stooping, kneeling, crouching, and crawling. Although not an examining source, Dr. Choi supported his conclusions with objective findings. Further, he has experience evaluating Social Security Disability claims. I give this opinion significant weight.

(Tr. 19-20).

Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). "It [i]s for the [Commissioner] and his examiner, as the fact finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)). As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded

lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (citation omitted). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports, the claimant's prior statements, the claimant's daily activities, and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptoms is at issue, once the ALJ finds the claimant has a medical condition that could reasonably be expected to produce the alleged symptoms, he must consider "the entire case record, including the objective medical evidence, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of his pain are credible. SSR 96-7p, 1996 WL 374186, at *1; *see also* 20 C.F.R. § 416.929. Consistency between the plaintiff's subjective complaints and the record evidence 'tends to support the credibility of the [plaintiff], while inconsistency, although not necessarily defeating, should have the opposite

effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th Cir. 2011).

Plaintiff claims that the ALJ's conclusion that plaintiff's "reported activities further degrade his credibility," stems from a misrepresentation regarding plaintiff's statements, and the ALJ's selectively identifying the evidence regarding plaintiff's reported level of activity. The ALJ cites to Exhibit 3E, plaintiff's self-completed Function Report – Adult to support his observation that plaintiff helped care for his father. (Tr. 232-239). However, plaintiff insists that he did not make any reference to taking care of his father on this form, and, in fact, denied that he was helping take care of another person at that time. *Id*. at 234. Plaintiff notes that "preparing his own meals" consists of fixing sandwiches and microwave prepared meals, 5-10 minute tasks; and his condition has caused this function to change because he can only stand for short periods, which is considerably more limited than the ALJ infers. *Id*. Similarly, plaintiff "completes household chores" such as loading the dishwasher, doing laundry or doing light pick-up no more than 10-15 minutes daily. *Id*. Further, plaintiff does not indicate that he drives when he goes out. *Id*. Thus, plaintiff asserts that the ALJ overstated the level of functioning plaintiff reported and failed to acknowledge that plaintiff indicated on the same form significantly restricted functions such as: not being able to walk more than two blocks; not being able to sit for more than thirty minutes without

putting his feet up; not shopping; and being limited to lifting only light loads. *Id*. at 232, 234, 235, 237.

Conversely, the Commissioner maintains that the ALJ appropriately considered plaintiff's activities of daily living. (Tr. 19-20). Plaintiff reported that he handled his personal care, prepared his own meals, loaded the dishwasher, did laundry, did light pick-up and light yard work, rode in a car and drove to the hearing, read, watched television, used the computer, went to the movies and restaurants, maintained social connections over the phone and on Facebook, and helped to care for his father. (Tr. 47, 233-36, 436, 440). The Commissioner points out that the Sixth Circuit has emphasized claimants' abilities to perform some of the same daily activities in a number of decisions denying benefits. And, while some of these activities were limited as to plaintiff, the ALJ did not equate these activities, in and of themselves, with the capability to do medium work. Rather, the referenced activities were only one part of the ALJ's overall consideration of plaintiff's allegations.

The Commissioner also points out that, despite plaintiff's challenge to the ALJ's statement that he drove, plaintiff did in fact testify that he drove to the hearing. (Tr. 19, 47). Additionally, though plaintiff took issue with the ALJ's finding that he helped to care for his father, the Commissioner points to records reflecting that plaintiff reported to Dr. Richter in 2015 that he lived with his father

who had dementia, had to be watched, and needed help because he was very weak. (Tr. 436, 440). Thus, the Commissioner maintains that the ALJ properly considered these activities as one factor in his overall assessment of plaintiff's RFC.

As the Commissioner acknowledges, plaintiff's reported activities, standing alone, are insufficient to support the ALJ's credibility findings. However, it is evident that the ALJ also relied on other medical evidence to support his RFC and adverse credibility findings, as discussed in more detail below. Moreover, an ALJ may reasonably view such daily activities as inconsistent with subjective complaints of disabling limitations. 20 C.F.R. § 404.1529(c)(3)(I); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) (recognizing that in nearly all cases, an evaluation of a claimant's daily activities is relevant to the evaluation of subjective complaints and ultimately, to the determination of disability); *Heston*, 245 F.3d at 536 (an ALJ may consider claimant's testimony of limitations in light of other evidence of claimant's ability to perform tasks such as walking, going to church, going on vacation, cooking, vacuuming and making beds). Notably, the ALJ did not say that any of these activities, individually or in combination, equated with an ability to sustain full-time work. Rather, the ALJ found that they showed plaintiff was less limited in his functional abilities than he alleged, which is a permissible credibility consideration. *See Garcia v. Comm'r of*

*Soc. Sec.*, 2018 WL 838371, at *15 (N.D. Ohio Feb. 12, 2018) (citing *Walters*, 127 F.3d at 532 (an ALJ may consider household activities in evaluating the credibility of the claimant's allegations of disabling symptoms); *Temples v. Comm'r of Soc. Sec.*, 515 Fed. Appx. 460, 462 (6th Cir. 2003) ("[T]he ALJ did not give undue consideration to Temples' ability to performing day-to-day activities. Rather, the ALJ properly considered this ability as one factor in determining whether Temples' testimony was credible."). Thus, it was entirely appropriate for the ALJ to consider plaintiff's activities of daily living as one factor in assessing his credibility and those findings are supported by the record.

According to plaintiff, there are also several other errors in the ALJ's credibility analysis, most of which can be described as the ALJ mischaracterizing the medical evidence in the record. Plaintiff first points to the ALJ's reference to the treatment regimen being limited to pain medication that was giving acceptable relief. As to the "pain at an acceptable level" finding, the medical records from each visit with plaintiff's pain management physician, Dr. Richter, say:

> Plan: Talked about the 4's of Analgesia: getting the pain at an acceptable level, Activity: Pain meds are helping and doing more, Adverse effects: constipation, Aberrant behavior: need to follow the pain agreement. Must keep Active!

(Tr. 424, 425, 426, 427, 428, 430, 433, 437). Plaintiff contends that the doctor was not saying that his pain was at an acceptable level, but rather that his "plan" –

the four goals of pain management – was to try to get the person to an acceptable level of pain. Thus, plaintiff insists that the ALJ misconstrued the level of pain that was being reported. In response, the Commissioner posits that even if the ALJ misread these treatment notes, Dr. Richter still said that the pain medication was helping and plaintiff was able to do more. (Tr. 423-28, 430, 433, 437, 441). Furthermore, Dr. Richter advised plaintiff to keep active, and did not recommend any further intervention. *Id*. Additionally, since the ALJ also gave other valid reasons for finding that the degree of limitation alleged by plaintiff was not supported by the record, any error in this regard does not require remand. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) ("[s]o long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal") (citation omitted). As discussed in detail below, the Court agrees that the ALJ's analysis, though perhaps imperfect in some respects, remains supported by substantial evidence.

While plaintiff contends that the ALJ selectively relied on or "cherry-picked" the medical evidence by pointing out less favorable and ignoring more positive findings, the Court concludes that the ALJ's approach is more accurately characterized as a weighing of the evidence. According to plaintiff, Dr. Richter

consistently documents chronic abdominal pain symptoms that worsen with moving and improve with lying still, and which, over time, lead to plaintiff switching from Norco to Tramadol, and later adding Gabapentin and Methadone as part of the pain regimen. (Tr. 424-430, 432-433, 435-437, 439). Plaintiff maintains that these records corroborate his testimony about his limited walking, standing and need to lie down, as well as his testimony about the need to take these medications for chronic abdominal pain. (Tr. 42, 47, 49). Plaintiff also contends that the prescription of these medications for a diagnosis of chronic abdominal pain corresponds with Dr. Richter's examinations finding a distended and scarred abdomen, and later adding tenderness to even light touch. *Id*. Plaintiff says that the ALJ does not discuss these components anywhere in his decision. Moreover, plaintiff points out that Dr. Rodriguez, who examined plaintiff at the request of the State Agency, also found tenderness on palpation of the abdomen and pain radiating to the abdomen while doing the left straight leg test (Tr. 411); yet the ALJ said that the straight leg testing was normal. (Tr. 19). Plaintiff argues the ALJ's discounting the credibility of his testimony of chronic pain based on the fact that plaintiff's treatment only involves ongoing pain management rather than more surgery also constitutes error. Plaintiff complains that the ALJ neglects to mention that the medications regularly prescribed to him by a pain specialist are narcotics directed at addressing severe chronic pain.

Further, the ALJ did not address the fact that plaintiff's surgeon did not direct that further surgery was warranted. (Tr. 414-417).

Notwithstanding the record evidence plaintiff points to above, the Commissioner points out that the records also reveal limited treatment and improvement in plaintiff's symptoms. As the Commissioner explains, prior to his application for SSI, plaintiff had open sigmoid colon resection with anastomosis (June 2012), CT guided drainage of LLQ abscess, and ventral hernia repair (January 2013). (Tr. 382, 388-89, 414, 416). In February 2013, plaintiff was admitted to the hospital for a short time after his hernia repair complaining of abdominal pain, but he was improved on discharge. (Tr. 288). Next, in April 2013, plaintiff's CT scan of the abdomen revealed an interval decrease in size of a previously observed upper abdominal encapsulated seroma/hematoma, and diverticulosis of the colon without evidence for diverticulitis. (Tr. 282-83). In January 2014, plaintiff underwent a consultative examination with Michael Rodriguez, D.O. (Tr. 407-411). On examination, there was tenderness to palpation of the abdomen in the lower left quadrant (Tr. 411), but otherwise the findings were normal: intact range of motion, intact grip strength, no tenderness, erythema, or effusion of any joint, no muscle spasm, no edema, negative straight leg raising (with some report of abdominal pain during the test), intact motor strength, intact sensation, present and symmetrical reflexes, no difficulty getting

17

on and off examination table, no difficulty heel and toes walking, no difficulty squatting, and no difficulty hopping. (Tr. 408-11). In January and February 2014, plaintiff's surgeon, Bashar G. Yaldo, saw him for follow-up, with plaintiff reporting abdominal pain. (Tr. 414-17). Dr. Yaldo's examination of the abdomen, revealed tenderness and an abdominal wall mass at the epigastric region, but otherwise there were no apparent scars, no palpable hernias, no abdominal distension, no other palpable abdominal masses, and normal bowel sounds. (Tr. 415, 417). Dr. Yaldo prescribed Norco, and advised that if plaintiff was still having pain, he would schedule an IR for abdominal wall fluid aspiration in six months. (Tr. 415). Plaintiff did not follow-up. Plaintiff also saw Ken Richter, M.D., with complaints of abdominal pain in 2014 and 2015. (Tr. 423-30, 432-41). Plaintiff did consistently report abdominal pain made worse with moving. *Id*. However, physical examinations were generally normal with intact gait and neurological findings. There was consistent mention of distended abdomen and some reports of tenderness. (Tr. 424-27, 429, 432, 436, 440). Plaintiff was primarily treated with tramadol, which he noted to be helpful. (Tr. 424-30, 432-33, 436-37, 440-41). Dr. Richter later also prescribed gabapentin and methadone for pain. *Id*.

Based on the medical record and treatment notes, the Court agrees with the Commissioner that the ALJ appropriately found that, while plaintiff did complain

of pain and there were findings of abdominal tenderness, the record largely shows that pain medication was helpful and effective. (Tr. 19-20). Notably, all other physical and neurological findings were normal. Plaintiff did not return to Dr. Yaldo for the abdominal wall fluid aspiration, which was recommended if the pain continued (Tr. 19-20, 52, 415); and plaintiff stated that he had not sought any emergency treatment recently. (Tr. 37). Dr. Richter himself noted that the medication was helping and advised plaintiff to remain active. (Tr. 423-28, 430, 433, 437, 441).

Additionally, the ALJ appropriately relied on Dr. Choi's conclusions that plaintiff could perform medium work. (Tr. 64-72). It is well-established that, under certain circumstances, opinions from reviewing State agency physicians "may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p; 1996 WL 374180, at *3; *Brooks v. Comm'r of Soc. Sec.*, 531 Fed. Appx. 636, 642 (6th Cir. 2013) ("[O]pinions from State agency medical and psychological consultants ... may be entitled to greater weight than the opinions of treating or examining sources.") (quoting SSR 96-6p, 1996 WL 374180, at *3); *Benson v. Colvin*, 2014 WL 3919577, at *9 (E.D. Ky. Aug. 11, 2014) ("[I]t is not a per se error to give more weight to the opinion of a non-examining physician than that given to an examining or treating physician's opinion."). Indeed, the opinions of state agency medical and psychological

consultants may be entitled to significant weight where they are supported by record evidence. *Lee v. Comm'r of Soc. Sec.*, 529 Fed. Appx. 706, 713 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i)). It is true that Dr. Choi's opinions were issued on January 24, 2014, and he did not have the benefit of Dr. Richter's records. However, the ALJ can reasonably credit the opinion of a reviewing medical source, despite the fact that the source did not have access to the entire record, where the conclusion that the claimant retained the capacity to work was supported by the totality of the medical and vocational evidence in the record. *Glasgow v. Comm'r of Soc. Sec.*, 690 Fed. Appx. 385, 387 (6th Cir. 2017) (citing *McGrew v. Comm'r of Soc. Sec.*, 343 Fed. Appx. 26, 32 (6th Cir. 2009) (concluding that an ALJ may rely on a state agency physician's opinion that is not based on all of the medical evidence in the record if the ALJ takes into account any evidence that the physician did not consider)). Here, the ALJ expressly considered Dr. Richter's records and, as discussed below, those records suggests that plaintiff is not as limited as he alleges.

Plaintiff began treating with Dr. Richter in June 2014 for abdominal pain and received a prescription for Norco. (Tr. 424). In September 2014, plaintiff reported that he could not tolerate the Norco and that the Tramadol was better for his abdominal pain. (Tr. 425). As a result, he received an adjustment to his Tramadol prescription at that time. *Id.* In December 2014, Dr. Richter continued

to prescribe Tramadol along with Gabapentin. (Tr. 426). In early April 2015, Dr. Richter placed plaintiff on a trial dose of Fentynal, along with short-acting Tramadol. (Tr. 428). Later in that same month, Dr. Richter prescribed Methadone, and noted that the pain medications were helping and that plaintiff was doing more. (Tr. 430). In July 2015, plaintiff's pain complaints remained consistent and his medications were continued. (Tr. 436-437). Plaintiff's pain score remained 6/10 throughout Dr. Richter's treatment, even though his pain was at time reported as "worse" or "better" and pain medications were noted as being helpful. While Dr. Richter concluded that plaintiff could not perform "medium" work, his opinion does not include any narrative or otherwise specify the basis for this conclusion. In particular, Dr. Richter's opinion does not address the components of medium work, that is, whether plaintiff could not meet the lifting or carrying requirements, the standing/walking requirements, or some other aspect of medium work. Furthermore, Dr. Richter's opinion that plaintiff could not perform medium work on a full time basis is a "check the box" form, unsupported by any reference to medical records. *See e.g.*, *Ashley v. Comm'r of Soc. Sec.*, 2014 WL 1052357, at *8 n.6 (W.D. Mich. Mar. 19, 2014) ("Courts have increasingly questioned the evidentiary value of 'multiple choice' or 'check-off' opinion forms complet[ed] by treating physicians which are not []supported by clinical records[.]"). Beyond his unsupported opinion that plaintiff cannot perform

medium work, Dr. Richter does not specify limitations beyond those captured in the assessed RFC, and nothing in Dr. Richter's treatment notes or other medical evidence in the record compels a different result than that found by the ALJ.

The Court notes that a claimant's assertion of "cherry picking" the record "is seldom successful because crediting it would require a court to re-weigh evidence." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) ("'[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.'")). Here, the Court concludes that the ALJ's credibility analysis is supported by substantial evidence. The ALJ reasonably concluded that the degree of limitation plaintiff alleged was not supported by the record. (Tr. 18-20). Notably, were the Court to remand this matter, there is nothing in the record that would compel a different result. The objective medical evidence does show that plaintiff has scar tissue and a seroma/hematoma that he has declined to have drained, but there is no evidence of any new hernia; and plaintiff points to no credible medical opinion suggesting that greater limitations apply. Thus, while observation of the former may evoke suspicion of attendant limitations, the absence of evidence of any specific limitations leaves at its core, an assessment of plaintiff's subjective pain complaints by the ALJ. And, as detailed above, the ALJ offered several well-

documented reasons for finding that the degree of limitation alleged by plaintiff was not supported by the record.  The ALJ's conclusions that (1) plaintiff's complaints were not supported by the medical evidence; (2) plaintiff only required conservative treatment for his pain, and such treatment helped relieve his pain; and (3) plaintiff engaged in several identified daily activities, are all supported by substantial evidence in the record.   Further, the ALJ also noted that his RFC finding was consistent with the medical opinion of Dr. Choi, M.D., the nonexamining state agency physician who opined that plaintiff could perform medium work after reviewing the record.  (Tr. 20, 69-70).  The credibility determination of the ALJ, to which considerable deference is afforded, is supported by substantial evidence and plaintiff's invitation to re-weigh the evidence is declined.

## IV.    CONCLUSION

For the reasons set forth above, the undersigned **DENIES** plaintiff's motion for summary judgment, **GRANTS** defendant's motion for summary judgment, and **AFFIRMS** the findings of the Commissioner.

**IT IS SO ORDERED**.

Date: March 29, 2018                          s/Stephanie Dawkins Davis
                                              Stephanie Dawkins Davis
                                              United States Magistrate Judge

**CERTIFICATE OF SERVICE**

 I certify that on March 29, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov
